FILED
9/9/2019
Clerk, U.S. District Court
District of Montana
Helena Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| CROWN PARTS AND MACHINES, INC., doing business as H-E Parts International,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>EURO MACHINE TOOL COMPANY INC.; FRANK TURI,<br><br>　　　　　　Defendants.<br>_____<br><br>EURO MACHINE TOOL COMPANY INC.,<br><br>　　　　　　Counterclaim<br>　　　　　　Plaintiff.<br><br>vs.<br><br>CROWN PARTS AND MACHINES, INC., doing business as H-E Parts International,<br><br>　　　　　　Counterclaim<br>　　　　　　Defendant. | CV 17-102-BLG-TJC<br><br>**ORDER** |

Plaintiff Crown Parts and Machines, Inc., doing business as H-E Parts International, ("H-E Parts") brings this action against Euro Machine Tool Company ("Euro Machine") and Frank Turi ("Turi") relating to H-E Parts'

1

purchase of a lathe from Defendants. H-E Parts alleges claims for breach of contract, revocation, breach of covenant of good faith and fair dealing, breach of implied warranties, fraud, and negligent misrepresentation.

Presently before the Court is H-E Parts' Motion for Partial Summary Judgment. (Doc. 38.) The motion is fully briefed and ripe for the Court's review.

Having considered the parties' submissions, the Court finds H-E Parts' motion should be **DENIED**.

**I.      FACTUAL BACKGROUND**[1]

H-E Parts is a Montana corporation in the business of supplying parts, remanufactured components and equipment to global mining, heavy construction, material processing and energy sectors. Euro Machine is an Illinois corporation that sells machinery. Turi is the President of Euro Machine.

Prior to 2005, there was a company in Poland called Fabryka Urzadzen Mechanicznych Poreba which manufactured lathes. H-E Parts previously owned a Polish-manufactured Poreba lathe. In 2003, Euro Machine obtained a distribution contract with Poreba. At that time, a company called Toolmex Corporation owned the "Poreba" trademark. In 2004, however, Euro Machine purchased the Poreba

---

[1] The background facts set forth here are relevant to the Court's determination of the pending motions for summary judgment and are taken from the parties' submissions and are undisputed except where indicated.

trademark from Toolmex for approximately $50,000.00. Euro Machine registered the "Poreba" mark with the United States Patent and Trademark Office. Euro Machine contends it purchased the trademark so that it could legally sell lathes using the Poreba name. Euro Machine has sold approximately 100 lathes and other machinery under the Poreba mark since 2004.

In approximately 2005, the Poreba Polish factory ceased manufacturing the types of lathes that H-E Parts utlized. The Polish factory has since gone out of business. Turi indicated in his deposition that another company has started building the large capacity machines that the Polish factory used to build.

In 2005, Euro Machine started private labeling the machines it sold with the Poreba trademark.[2] Euro Machine does not manufacture lathes. Rather, according to Turi, "we would buy machines from various companies, and since we owned the trademark, we put our brand on it and we sold them as a Poreba machine because that was the brand that we were selling." Euro Machine purchased machines for this purpose from three or four factories. The lathe Euro Machine sold to H-E Parts was manufactured by ZMM, a Bulgarian manufacturer.

In late November 2015, H-E Parts agreed to purchase a lathe from Euro

---

[2] "Private labeling occurs when a retailer places its own label on a [product] that it purchases from a manufacturer." *Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 754 n.3 (9th Cir. 2006).

Machine. Euro Machine and H-E Parts memorialized their agreement in an invoice dated November 30, 2015. The invoice described the lathe as "One New Poreba 36" x 118" Hollow Spindle Lathe, Model: TR22-93/14/3M." The cost of the new Poreba was $129,500.00. As part of the purchase, H-E Parts traded-in its 1978 "Used Poreba" lathe for $30,000, thereby bringing the total purchase price to $99,500.00. The invoice also provided that Euro Machine would "supply a technician to level and power the Poreba 36" x 118" Hollow Spindle Lathe (1-day)."

Approximately one week before the purchase, Eric Simmons, the Safety Co-Coordinator for H-E Parts forwarded to Bill Brown, the President of H-E Parts, the proposal from Euro Machine, with the following discussion:

> We have bought the CNC Poreba from this company as a used piece of equipment, I am not sure how many years ago. The Poreba Brand was originally built in Poland, it has since been bought out by private investors and been moved to Taiwan, where the brakes underwent a complete redesign and the electronics were modernized to remove some earlier failings of the Polish design. Practical Machinist had high ratings of the machine when built in Poland and higher praise since moving to Taiwan. Frank had problems getting some parts for the machines we have, both of Polish manufacture, leading to some frustration on Ed's part. But with this being a new machine Ed is comfortable with dealing with Euro Machine Tool.

Nevertheless, H-E Parts states it desired to purchase a Polish-made Poreba lathe, due to the quality of the Poreba machine. H-E Parts contends it "believed and understood it was purchasing a Poreba-made lathe when it entered into the

4

contract with Euro Machine," and that it "relied on the representations of Frank Turi that the lathe H-E Parts was purchasing was in fact a Poreba-made lathe." H-E Parts further contends that if it had known "the lathe sold by Euro Machine and Turi was not in fact made by Poreba, H-E Parts would not have purchased the lathe." H-E Parts states it did not care about the name on the machine, rather "it cared about what company manufactured the lathe."

Turi contends, however, that he did "not know whether [H-E Parts] desired to buy a Polish-made lathe. It did not tell [him] it wanted to buy a Polish-made lathe." Turi further contends that he "did not represent to any person within [H-E Parts] that [he] was selling them a lathe manufactured by Fabryka Urzadzen Mechanicznych Poreba in Poland, nor did [he] tell them that the lathe they were buying was manufactured in Poland." Turi states he represented to H-E Parts that he was selling it a "New Poreba 36" x 118" Hollow Spindle Lathe," and contends that is exactly what he delivered. Turi explains that the lathe was new when it was sold to H-E Parts, and that Euro Machine's ownership of the Poreba trademark gave it the legal right to sell the lathe as a Poreba-branded lathe. Turi further states that he personally inspected the lathe and concluded it was of sufficient quality to be sold under the Poreba trademark.

H-E Parts received the lathe on February 16, 2016, but H-E Parts contends it has been inoperable since it was installed due to poor quality and defective

5

manufacturing. Specifically, H-E Parts states the lathe does not lubricate properly, has too soft of clamping jaws on the chucks to properly hold parts during machining, cuts with a taper, and kicks out of gear while operating. In April 2017, H-E Parts removed the lathe from service due to safety and performance issues. H-E Parts purchased a replacement "Mazak" lathe in August 2017 at a cost of $93,500.00, plus and additional $3,000.00 and $1,591.82 for freight and technician set up. H-E Parts states the lathe it purchased from Euro Machine remains under tarp at its facility.

## II. LEGAL STANDARD

A court will grant summary judgment if the movant can show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id*. When making this determination, the Court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587.

The moving party has the initial burden to submit evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets its initial responsibility, the burden shifts to

the nonmoving party to establish a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**DISCUSSION**

H-E Parts moves for summary judgment on its breach of contract, fraud and negligent misrepresentation claims. H-E Parts asserts it specifically contracted to purchase a Poreba-manufactured lathe from Euro Machine. H-E Parts argues Euro Machine indisputably breached the contract when it delivered a Bulgarian-made lathe instead. H-E Parts further argues Euro Machine and Turi engaged in fraud by selling the Bulgarian-manufactured lathe with a Poreba label after representing they were selling a Poreba-manufactured lathe. Alternatively, H-E Parts argues Euro Machine and Turi negligently misrepresented the manufacturer of the lathe.

Euro Machine counters that summary judgment is not appropriate on the breach of contract claim because material facts are in dispute. Euro Machine contends H-E Parts' allegations are contradicted by H-E Parts' own internal emails, and are directly disputed by Turi's Affidavit, in which he states he never promised to sell H-E Parts a Polish-manufactured lathe. Euro Machine and Turi further argue the Court should enter summary judgment in their favor on the fraud and negligent misrepresentation claims under Fed. R. Civ. P. 56(f)(1) because they had the legal right to sell the lathe as a "Poreba" lathe, and because H-E Parts knew it was not buying a Polish-made lathe.

7

## A. Breach of Contract

"The interpretation and construction of a contract is a question of law." *Krajacich v. Great Falls Clinic, LLP*, 276 P.3d 922, 926 (Mont. 2012). "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." *Id*. The mutual intention of the parties "is to be ascertained from the writing if possible." *Mary J. Baker Rev. Trust v. Cenex Harvest States, Coop., Inc.*, 164 P.3d 851, 857 (Mont. 2007). "If the language of a contract is unambiguous – i.e., reasonably susceptible to only one construction – the duty of the court is to apply the language as written." *Id.* If, however, the language is ambiguous, "a factual determination must be made as to the parties' intent in entering into the contract." *Id.*

"The existence of an ambiguity must be determined on an objective basis, and an ambiguity exists only if the language is susceptible to at least two reasonable but conflicting meanings." *Corporate Air*, 190 P.3d at ¶ 31. (*citing Perf. Mach. Co., Inc. v. Yellowstone Mount. Club*, 169 P.3d 394, ¶ 39 (Mont. 2007)). Evidence of the circumstances under which the contract was made may be considered by the court "in determining, as a preliminary matter, whether the contract contains an ambiguity." *Broadwater Dev., LLC v. Nelson*, 219 P.3d 492, 501 (Mont. 2009). "Where there is an ambiguity, the fact-finder may rely on

8

extrinsic evidence to determine the parties' intent." *Corp. Air v. Edwards Jet Ctr.*, 190 P.3d 1111, 1121 (Mont. 2008).

Under the parties' agreement here, H-E Parts agreed to purchase "One New Poreba 36" x 118" Hollow Spindle Lathe" for the price of $129,500.00, and to trade in "One Used Poreba" for $30,000. In a sense, the language of the invoice is unambiguous. H-E Parts traded in an "Old Poreba" for a "New Poreba." But discerning what the parties understood "Poreba" to mean is problematic from the plain language of the invoice. There is nothing in the invoice that defines the term "Poreba."

On one hand, "Poreba" could mean a Poreba-manufactured lathe. H-E Parts traded in a used Poreba-manufactured lathe. H-E Parts asserts it was under the impression it was likewise purchasing a new Poreba-manufactured lathe. On the other hand, "Poreba" could simply mean a Poreba-branded lathe. Euro Machine holds a valid trademark for the name Poreba even though they do not manufacture lathes. As such, Euro Machine believed it had the legal right to sell lathes under the Poreba brand. Both interpretations of the term "Poreba" are reasonable given the facts of this case. Accordingly, the Court finds the term "Poreba" is ambiguous. Therefore, the Court cannot find as a matter of law that the parties' contracted for the sale of a Poreba-manufactured lathe, and that Euro Machine

breached the contract by delivering a Poreba-branded lathe that was manufactured in Bulgaria.

Further, upon looking to the extrinsic evidence of the parties' intent, there are disputed issues of material fact. First, there are disputed issues regarding whether H-E Parts was promised a Poreba-manufactured lathe. H-E Parts alleges it wanted to purchase a Poreba-made lathe, and that it "believed and understood" it was purchasing such a lathe when it entered into the contract with Euro Machine. H-E Parts also contends it "relied on the representations of Frank Turi that the lathe [it] was purchasing was in fact a Poreba-made lathe." H-E Parts does not, however, state with any specificity what actual promise or representation was made by Turi.

In response, Turi avers that he did not know H-E Parts wanted to buy a Polish-made lathe, and states H-E Parts did not tell him it wanted a Polish-made lathe. Turi further states that he did not represent to anyone at H-E Parts that "I was selling them a lathe manufactured by Fabryka Urzadzen Mechanicznych Poreba in Poland, nor did I tell them that the lathe they were buying was manufactured in Poland." Second, H-E Parts' internal email undermines its claim that it thought it was purchasing a Polish-made lathe. The email illustrates that H-E Parts knew the Poreba brand was no longer built in Poland, but was rather made in Taiwan.

Accordingly, the Court finds these factual disputes preclude summary judgment on H-E Parts' breach of contract claim.

**B.     Fraud and/or Negligent Misrepresentation**

"Fraud is either actual or constructive." Mont. Code Ann. § 28-2-404. For actual fraud, Montana common law requires nine elements for a prima facie claim:

> (1) a representation; (2) falsity of representation; (3) materiality of that representation; (4) speaker's knowledge of falsity of representation or ignorance of its truth; (5) the speaker's intent that it should be relied on; (6) the hearer is ignorant of the falsity of the representation; (7) the hearer relies on the representation; (8) the hearer has a right to rely on the representation; and, (9) consequent and proximate injury was caused by reliance on the representation.

*First Nat'l Bank in Havre v. Nelson*, 741 P.2d 420, 421 (Mont. 1987). "Once a prima facie case is established, '[a]ctual fraud is always a question of fact.'" *Morrow v. Bank of America, N.A.*, 324 P.3d 1167, 1183 (Mont. 2014) (*citing* Mont. Code Ann. § 28-2-404).

"[C]onstructive fraud is a breach of duty which, without fraudulent intent, creates an advantage for the breaching party by misleading another person to that person's prejudice." *Morrow*, 324 P.3d at 1183 (*citing* Mont. Code Ann. § 28-2-406). "[A]n indispensable element of constructive fraud is a breach of duty to disclose material facts." *Mends v. Dykstra*, 637 P.2d 502, 506 (Mont. 1981).

For negligent misrepresentation under Montana law, the plaintiff must establish:

> a) the defendant made a representation as to a past or existing material fact; b) the representation must have been untrue; c) regardless of its actual belief, the defendant must have made the representations without any reasonable ground for believing it to be true; d) the representation must have been made with the intent to induce the plaintiff to rely on it; e) the plaintiff must have been unaware of the falsity of the representation; it must have acted in reliance upon the truth of the representation and it must have been justified in relying upon the representation; [and] f) the plaintiff, as a result of its reliance, must sustain damage.

*Morrow*, 324 P.3d at 1180. "To succeed with a claim for negligent misrepresentation, a party need not demonstrate an intent on the part of a defendant to misrepresent, but must merely show 'a failure to use reasonable care or competence in obtaining or communicating ... information.'" *Jackson v. State*, 956 P.2d 35, 43 (Mont. 1998) (citing *Barrett v. Holland & Hart*, 845 P.2d 714, 717 (Mont. 1992).

As discussed with regard to the breach of contract claim, a factual dispute exists as to whether Euro Machine or Turi made a false representation to H-E Parts regarding the manufacturer of the lathe. H-E Parts submitted an affidavit from Shane Pence, its North American Strategic Projects Manager, stating H-E Parts purchased the lathe based on Turi's representations that the lathe was a Poreba-manufactured machine. Turi submitted a counter affidavit stating he never promised or represented that the lathe was made by the Poreba company in Poland.

Further, even assuming Euro Machine or Turi made a false representation, H-E Parts' internal emails raise a question of fact about whether H-E Parts knew

12

the representation was false. As such, the Court finds a reasonable jury could return a verdict in favor of either party on the fraud and/or negligent misrepresentation claims. Accordingly, H-E Parts' request for summary judgment on the fraud and negligent misrepresentation claims is denied.

Likewise, the Court finds Euro Machine and Turi are not entitled to summary judgment on the fraud and negligent misrepresentation claims. Defendants assert they had the legal right to sell the lathe under the Poreba brand because Euro Machine owns the "Poreba" trademark. Regardless of the validity of the trademark, however, Defendants are not necessarily shielded from liability if they misrepresented the source of the lathe. *Durbin v. Ross*, 916 P.2d 758, 762 (Mont. 1996) (noting that "[w]ithholding relevant facts concerning purchased property can be a fraudulent act. Furthermore, where a vendor by his conduct or words creates a false impression concerning a matter of vital importance to the purchaser, full disclosure of relevant facts may be required."). Because there are disputed issues of fact regarding Defendants' representations regarding the lathe, Euro Machine and Turi's request for summary judgment is denied.

### III. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. H-E Parts' Motion for Partial Summary Judgment (Doc. 38) is **DENIED**;

2. Defendants' request for partial summary judgment pursuant to Rule 56(f)(1) is **DENIED**.

**IT IS ORDERED**.

DATED this 9th day of September, 2019.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge